Antonio V. Rolon
81168  ISCC / F-1, 35 A
P.O. Box  70010
Boise, ID       83707

U.S. COURTS

JUL 05 2019

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTONIO V. ROLON,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN G. MIGLIORI, MD;<br>GRANT W. ROBERTS, HSA;<br>CORIZON, INC.; KEVIN G. SHEA, MD;<br>JOSH TEWALT, Director, Idaho<br>Department of Correction (IDOC);<br>RONA SIEGERT, RN-CCHP, IDOC Health<br>Services Director; JOHN and/or JANE<br>DOES A - Z; and their successors in<br>Office, sued in their individual and<br>official capacities,<br><br>    Defendants. | Case No. 1:19-cv-00254-BLW<br><br>**COMPLAINT**<br><br>JURY DEMANDED for all<br>claims triable to the jury:<br><br>DECLARATORY and EQUITABLE<br>RELIEF sought for individual<br>Claims under 42 USC § 1983 |

    COMES NOW, Antonio V. Rolon, the Plaintiff in the above-captioned case, alleges the following against the Defendants:

### INTRODUCTION

    This is a civil rights action filed by Antonio Rolon, a state prisoner seeking damages and injunctive relief under 42 U.S.C. § 1983, alleging that various individuals and prison officials, while acting in conjunction with a privately contracted prison medical corporation, deprived Mr. Rolon of his

COMPLAINT - 1

rights under state and federal law to meaningful and appropriate medical care related to severe chronic pain involving his right and left knee joints, in violation of the Eighth Amendment of the United States Constitution. The Plaintiff further alleges the torts of negligence and medical malpractice.

## JURISDICTION

1. This Court has jurisdiction over the Plaintiff's claims asserting violation of his federal constitutional rights under 42 U.S.C. §§ 1331(1), and 1343.

2. The Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. § 1367(c).

## VENUE

3. Venue is proper given that the events, acts and omissions alleged herein, occurred in the State of Idaho, County of Ada, and within this Court's territory of jurisdiction.

## PARTIES

4. Plaintiff, Antonio V. Rolon, at all times relevant hereto, was incarcerated at the Idaho State Correctional Center (hereafter "ISCC") during the events described in the complaint.

5. Defendant John G. Migliori, MD, is the Medical Director at the ISCC Medical Unit; and while acting in conformity thereto personally examined Mr. Rolon and assumed a physician's duty and responsibility for Plaintiff/patient care and wellbeing. Dr. Migliori is an employee of co-defendant Corizon, Inc. He is sued in his individual and official capacities.

6. Defendant Grant W. Roberts, Health Services Administrator (hereafter "HSA"), is an employee of co-defendant Corizon, Inc., and while

COMPLAINT - 2

acting in conformity thereto is responsible for ensuring the provision of medical care to prisoners at the ISCC, and specifically oversees scheduling of medical appointments with off-site specialist providers when a patient's need requires further evaluation, care, and/or treatment outside the ISCC Medical Unit. Mr. Roberts is sued in his official and individual capacities.

7. Defendant Corizon, Inc., is a private entity health care provider, incorporated in the State of Missouri, operating as a for-profit business within the State of Idaho. At all times relevant hereto, Defendant Corizon, Inc. was the contracted health care provider for the IDOC, Pursuant to said contract Corizon, Inc. is responsible for providing adequate and professional care to all prisoner's in IDOC custody, including Mr. Rolon. Defendant Corizon, Inc., is sued in its official capacity.

8. Defendant Joshua Tewalt, Director, IDOC, is an individual charged with operating the State's prison system in a manner that comports with state and federal law. As such, Defendant Tewalt holds a lawful duty and obligation to ensure that prisoners under his care, custody and control receive appropriate medical care, to include Mr. Rolon. Defendant Tewalt is aware of the facts alleged below, has acted and continues to act under color of law, custom and policy with respect to IDOC's failure and refusal to provide constitutionally adequate care and treatment to the Plaintiff.

Defendant Tewalt is sued in his official capacity.

9. Defendant Rona Siegert, RN-CCHP, IDOC Health Services Director, is personally aware of the facts and circumstances alleged below, has acted and continues to act under color of law, custom and policy with respect to her failure and/or refusal to provide constitutionally adequate medical care and treatment to the Plaintiff. Defendant Siegert is sued in her official and individual capacities.

COMPLAINT - 3

10. Defendant Kevin G. Shea, MD, a private practitioner orthopaedic surgeon, and while acting in conformity thereto personally examined Mr. Rolon and assumed a physician's duty and responsibility for Plaintiff/patient care and wellbeing. At all times relevant hereto, Dr. Shea was an associate of St. Luke's Clinic, Intermountain Orthopaedics, located in Boise, Idaho. Dr. Shea is sued in his individual capacity.

11. Defendants JOHN and/or JANE DOE'S A – Z, adult individuals, are doctor's, physician assistant's, nurses, and IDOC employees, agents or representatives whose work places are located at ISCC and are charged with responding to prisoners' requests for medical care, each having a duty and professional obligation to administer medical care in a manner that complies with prevailing standards of care. Plaintiff sues Defendants JOHN and/or JANE DOE'S in their respective individual and official capacities for actions taken under color of law, and for acts and omissions giving rise to deliberate indifference for failing to provide constitutionally adequate medical care and treatment to Mr. Rolon.

**FACTS**

12. Antonio V. Rolon (Mr. Rolon) suffers severe knee pain in both his right and left knee joints. In compliance with IDOC Standard Operating Procedure (SOP) Mr. Rolon submitted multiple Health Service Request Form(s) (HSR) seeking medical attention for his condition.

13. Mr. Rolon's knee pain was initially contained to his right knee. An HSR was submitted to prison official's requesting medical care in or around December 2014. By late 2015, Mr. Rolon was then being housed in a private prison under contract with the IDOC; Kit Carson Correctional Center (KCCC), Burlington, Colorado. When prison medical providers failed to meaningfully address his pain,

Mr. Rolon submitted written Grievance's requesting informal resolution seeking follow-up care and to be evaluated by an orthopedic physician.

14. On or about December 2, 2015, Mr. Rolon was transported to a Denver area Hospital where an MRI revealed "medial and lateral meniscal tears." A corrective procedure was postponed because the IDOC had ended their contract with KCCC, and were returning Mr. Rolon to an Idaho prison (ISCC).

15. On or about March 25, 2016, Mr. Rolon participated in a medical intake screening on entering the ISCC. Mr. Rolon reported his severe knee pain to a Corizon, Inc. medical staff person. On instruction from medical staff, Mr. Rolon submitted HSR's (No's 823695; 823696) dated April 9, 2016) again requesting medical attention for his severe knee pain, reiterating that he had been transfered from a Colorado prison where he was previously diagnosed with meniscus injuries that require surgical procedure to alleviate his pain and mobility limitation(s).

16. Mr. Rolon's previous physician, Dr. Tiona, KCCC, Burlington, CO informed Mr. Rolon that the necessary surgical procedure to repair his right knee, was to be postponed until he returned to Idaho / IDOC facility.

17. On April 15, 2016, Mr. Rolon submitted another HSR (No. 823979) advising IDOC / Corizon officials that the pain in his knee's was getting worse, and that the over-the-counter Rx medications, i.e. Meloxicam, 7.5 mg, Ibuprofen, were ineffective and that he requested to be examined by a doctor.

18. Mr. Rolon's medical chart entries indicate that his medical records from KCCC, followed Mr. Rolon from Colorado to IDOC upon his transfer. The MRI taken at Denver Health Hospital, was reviewed by ISCC Medical Director Dr. John G. Migliori on May 9, 2016. Rather than scheduling Mr. Rolon for a follow-up care examination, Dr. Migliori directed his patient, Mr. Rolon, be examined by Janet Mitchell, PAC. Moreover, Dr. Migliori forwarded Mr. Rolon's

Radiology Consultation Report (MRI), images taken December 2, 2015, submitted to a local orthopedic surgeon, Roman Schwartsman, MD., for a specialist consultation regarding Mr. Rolon's knee problems.

19. On May 11, 2016, Dr. Schwartsman provided his medical findings to Corizon officials. In review of Mr. Rolon's MRI, Dr. Schwartsman issued the folowing opinion:

> "Patient has medial & lateral meniscal tears, may benefit from arthroscopy, please send him to my office for evaluation."

Note reviewed, Janet Mitchell, P.A.C. May 20, 2016; BOM No. 048-49.

20. In response to Dr. Schwartsman's recommendation, Dr. Migliori referred Mr. Rolon to Eleanore Westburg, PT, to participate in weekly physical therapy sessions. Progress notes from a May 24, 2016, physical therapy session indicate Mr. Rolon complained of right knee pain, and Ms. Westburg noted infra patellar edema, + vibration at distal patella, and spoke with Dr. Migliori to request an x-ray of the right knee.

21. On or about June 9, 2016, Mr. Rolon was examined by P.A.C. Mitchell where it was noted "P/T had setback due to fascial irritation." Results of the x-ray, "shows old bony fragment in the distal patellar tendon, no fx." Further, a discussion with Mr. Rolon revealed that (Dr. Schwartsman), "ortho's review of pt's Right knee MRI states pt has evidence of medial and lateral meniscal tears and that patient may benefit from arthroscopy." This was the first time that Mr. Rolon learned an offsite orthopedic had recommended a corrective procedure. Nevertheless, P.A.C. Mitchell ordered Mr. Rolon continue with physical therapy sessions "until maximum benefit reached ... then re-evaluate if surgery indicated."

22. After five (5) sessions with Ms. Westburg, PT, Mr. Rolon was informed he was being discharged from physical therapy. Despite continuous pain—it was advised Mr. Rolon "avoid squatting and heavy endurance training." This in

COMPLAINT - 6

response to Mr. Rolon's continuous pain, edema of the patella, and difficulty performing daily living activities.

23. In an attempt to manage Mr. Rolon's significant pain and discomfort, Dr. Migliori prescribed a 60 day regimen of Meloxicam (7.5 mg. x BID), March 28 2016; later on June 30, 2016, PA Mitchell renewed Meloxicam Rx, and further prescribed Tylenol (325 mg. x TID) for a 90 day regimen. Mr. Rolon followed medical advice by consuming these medications but continuously reported they are ineffective in reducing his severe pain.(Practitioner's Orders, BOM 031).

24. On or about July 6, 2016, Dr. Migliori performed an infra arthro-cellular injection of the right knee (Kenelog 40 mg. + 2% Lidocaine) in an attempt to reduce Mr. Rolon's knee pain.

25. Mr. Rolon began experiencing pain in his left knee in or around June 2016. PA Mitchell examined the patient on June 30, 2016, noting "no obvious deformity, no swelling, or warmth / redness, mild crepitas leg extension." Moreover, PA Mitchell explained "PT has gained function _ conservative TX _ and NSAID's ... discussed that any surgery poses risks and it would be better off **at this time** to continue conservative TX and **manage** his pain **until** such time as function decreases or pain cannot be managed." (Progress Notes, PA Janet Mitchell, June 30, 2016; BOM 016, emphasis added).

26. Throughout Mr. Rolon's medical chart, Corizon staff indicate multiple entries concerning Mr. Rolon "can accomplish ADL's and additional sports activities [but] instructed to avoid HEP to avoid loaded squats and heavy endurance training ..." (Progress Note, Eleanore Westberg, PT, DPT, MTC, June 21, 2016; BOM 015). Mr. Rolon refutes such references insofar as he is substantially unable to exercise, performs no "squats" or "heavy endurance training" of any kind whatsoever. Moreover, Mr. Rolon does not recall discussing these issues with PT Westberg. Its axiomatic that such

COMPLAINT - 7

activities are beyond Mr. Rolon's capability due to the severe pain his condition renders strenuous exercise unmanageable. (cf. Progress Notes PT Westberg; PA Mitchell; BOM's 012-018.)  Mr. Rolon is 35 years old, cannot run, jump, or play in any manner whatsoever. Any suggestions to the contrary are simply false. Merely sitting in a chair with bended knees produces severe pain and discomfort.

27. On or about January 17, 2017, Mr. Rolon was scheduled for follow-up examination due recurrent knee pain. PA-C Colin Brown observed medial sided swelling of Mr. Rolon's left knee and noted the patient continues to suffer chronic right knee pain. PA Brown ordered an x-ray of Mr. Rolon's left knee. The medical chart reveals a further recitation of Corizon employee's self-serving narrative "ADL's easily performed", "PT admits to ability to exercise, not as desired d/t pain ... tries to run & squat ... PT is still working." (Progress Note, PA-C Colin Brown, January 17, 2017; BOM 019).  Mr. Rolon strongly denies the defendant's intentional misrepresentation of his presenting condition and asserts that such methods are designed to insulate themselves and their employer from liability due to policy/ies of utilization management, deliberate indifference to serious medical need, and instances of negligence and/or medical malpractice.

28. An x-ray of Mr. Rolon's left knee, taken January 18, 2017, revealed a foreign body BB in the infra-patellar soft tissues anterior to the medial condyle. Furthermore, a calcification at the insertion of the patellar tendon on the tibial tuberosity consistent with sequela of old trauma. (X-ray Report Blue Mountain Diagnostic Imaging, BOM 051).

29. On January 25, 2017, Dr. Migliori examined Mr. Rolon's right and left knee's. The follow-up x-ray "does not delineate the soft tissue mass which is painful ... I/M claims mass there for 3-4 weeks, slightly enlarged in

COMPLAINT - 8

size, able to flex / extend knee [with] pain; able to stand / wt bear _ minimal discomfort." "Impression synovial cyst (left knee), plan of care (1) ultrasound left knee; (2) infra articular Kenelog [injection] based on ultrasound results; (3) continue anti-inflamatories [Mobic, Meloxicam, Tylenol]; (4) follow-up with ortho (specialist) if no improvement after above." (Progress Note, January 25, 2017, Dr. Migliori; BOM 020.)

30. On or about April 17, 2017, Dr. Migliori performed an intra-articular steroid injection (Kenelog 40 mg. + 3 cc. (2%) Lidocaine) of Mr. Rolon's left knee joint. A 3-4 week follow-up appointment was scheduled to assess progress; and medication discontinued (Meloxicam 7.5 mg. tabs)). Thereafter, Mr. Rolon continued to experience significant pain and discomfort and complained of difficulty in performing ordinary tasks of daily living.

31. On May 17, 2017, Mr. Rolon was examined (off-site) at St. Luke's Orthopedics by Kevin G. Shea, MD; presenting symptoms "IMPRESSION: Healthy 33 year old male with Left knee cyst-1 year; Right knee pain-3 years; his x-rays do show evidence of early degenerative osteoarthritis medial compartments of both knees. This also matches the location of pain. Fortunately he is not having significant mechanical symptoms." Dr. Shea reviewed ultrasound imaging from February 23, 2017 (taken at ISCC Medcial Unit) but was not provided the MRI report from December 2, 2015. Moreover, Dr. Shea did not conduct a further MRI to detect soft-tissue injuries of Mr. Rolon's knee's. (Consultation Request January 25, 2017, Dr. Migliori; BOM 059; St. Lukes Health System (BOM submission pages 1-10; x-ray images (five) VW Bilateral, Dr. Michael A. Fuchs, MD (no bates numbering).

32. Dr. Shea recommended "judicious use of NSAID/APAP, avoidance of impact exercise, ice to knee's PRN, and knee sleeves, or rigid knee bracing

COMPLAINT - 9

to offer temporary relief (but not long-term fix), and that arthroscopic meniscectomy "unlikely to offer relief of pain with the mild osteoarthritis." (Medical encounter, June 07, 2017, as entered by Dr. Migliori, BOM 044).

Mr. Rolon has experienced severe knee pain going back as far as 2015. Efforts to manage his pain pharmacologically (Mobic, Tylenol, Meloxicam) have been unsuccessful. Compression sleeves have failed to produce meaningful relief of his pain. Clinical Practice Guidelines concerning Evaluation and Management of Osteoarthritis of the Hip and Knee: www.bop.gov/resources/health care mngmt.jsp; together with the National Commission on Correctional Health Care establish criteria for consideration of elective arthroplasty surgery procedures; Mr. Rolon's presenting symptoms meet or exceed these standards based on medical history, presenting symptoms, physical examination(s), and diagnostics are consistent with advanced disease of the knee joints.

33. The defendant's failure to adhere to the community standard of care concerning Mr. Rolon's serious medical need, has subjected the plaintiff to unnecessary suffering and prolonged pain. Failing to accept Dr. Roman Schwartsman's medical recommendation and findings; while neglecting to provide the MRI of Mr. Rolon's documented soft-tissue "medial and lateral meniscal tears" to Dr. Shea, is tantamount to deliberate indifference of Mr. Rolon's serious medical need.

34. Corizon, Inc. offers cost containment incentives to its physician employee's, under guidelines commonly referred to as "utilization management." The plaintiff asserts such policies constitute an egregious incentive to prison medical staff to depart from acceptable medical standards and deny needed medical care to prisoners, including Mr. Rolon.

35. As of this filing the plaintiff continues to suffer extreme pain due to the failures of the named defendants, individually and collectively.

COMPLAINT - 10

36. Upon information and belief, Mr. Rolon has exhausted his administrative remedies in full complinace to IDOC SOP 316.02.01.001, i.e. Grievance and Informal Resolution Procedure, e.g. Offender Concern Form, Grievance, Appeal; notice of claim in accordance with the Idaho Tort Claims Act, I.C. 6-901, et seq., satisfying notification and exhaustion requirements under state and federal law.

37. As a direct and proximate cause of these Defendants' failure to provide the current community standard of care for osteoarthritis of the knee, Mr. Rolon has needlessly suffered pain and a diminished ability to perform routine daily activity.

38. The foregoing averments and assertions of Mr. Rolon constitute that the plaintiff faces imminent danger of serious and continuing physical pain and medical injury.

## CLAIMS

### CLAIM I:

**DEPRIVATION OF U.S. CONST. AMEND VIII
RIGHT TO BE FREE FROM INFLICTION OF CRUEL AND UNUSUAL
PUNISHMENT, FOR WHICH 42 U.S.C. Sec. 1983 PROVIDES REMEDIES**

39. Plaintiff realleges the allegations in paragraphs 1 through 38 above and incorporate the same herein by reference as if set forth fully.

40. Defendants Tewalt ("IDOC") and Siegert, in their official capacities, and Defendants Corizon, Migliori, Roberts, and Does A-Z, in their respective individual and official capacities, jointly and severally, have enforced policies, procedures and practices that (a) by knowingly disregarding the community standard of care for osteoarthritis of the knee, as established by local practitioner's in the medical community; the National Commission on Correctional Health Care ("NCCHC.org"); and the Federal Bureau of Prisons

Clinical Practice Guidelines ("FBOP"), cf. paragraph 32 above; intentionally denies the plaintiff a medically necessary corrective procedure for reasons of administrative convenience or costs; thereby depriving Mr. Rolon relief from his excruciating knee pain, which contravenes the clearly established standard of care for osteoarthritis of the knees.

41. Medical staff employed by the private sub-contractors to IDOC, Corizon, and Defendants Migliori, Roberts, Shea, John and Jane Does A - Z, were aware of the Constitutional inadequacies of their past and current treatment of osteoarthritis of the knee's, and their refusal to correct these policies for non-medical reasons, constitutes wanton and willful disregard for medical standards and practice.

42. Defendants' failure to provide Plaintiff with a widely available corrective procedure was knowing and intentional, which further constitutes deliberate indifference to Mr. Rolon's medical needs, thereby violating his right to be free from cruel and unusual punishment as proscribed by U.S. Const. Amend. VIII, for which 42 U.S.C. Sec. 1983 provides declaratory, equitable, and other legal remedies.

43. Defendant Corizon as a matter of non-medical corporate policy or custom, has enforced an outdated low cost treatment ("conservative treatment plan") while relying upon subjective data as a means to exclude or ration a meaningful corrective procedure, thereby enforcing the deliberate indifference and cruel and unusual punishment arising from failing to provide the local community standard of care, in violation of Plaintiff's clearly established right to be free from cruel and unusual punishment under U.S. Const. amend. VIII.

44. These allegations constitute averments of imminent danger of serious and continuing physical, medical injury.

45. Plaintiff seeks injunctive relief requiring Defendants to immediately adopt a policy whereby Mr. Rolon will be offered the corrective arthroscopic meniscectomy, as recommended by Dr. Roman Schwartsman; and to cease negotiating second opinions that are orchestrated through incomplete disclosure of medical data (MRI not disclosed to Dr. Kevin Shea); and failure to authorize medically necessary imaging to effect preferred medical opinions.

46. As a direct and proximate result of the Defendants' acts, omissions, and other wrongful conduct, Mr. Rolon has suffered irreversible progression of osteo-arthritis and the health and medical consequences thereof, to include physical pain, suffering, and/or emotional distress.

47. Plaintiff seeds punitive damages against Defendants Corizon, Migliori Roberts, and Jane and John Does A – Z for the worsening of his physical or emotional health as a consequence of delays in receiving the community standard of care as a result of Defendant Corizon's policies which represent an extreme deviation from reasonable standards of care for such providers of health care in the United States.

## CLAIM II:

### Medical Malpractice Against Corizon, Drs. Shea, and Migliori pursuant to Idaho Code Sec. 6-1012

48. Plaintiff realleges the allegations in paragraphs 1 through 47 above and incorporate the same herein by reference as if set forth fully.

49. Plaintiff brings this action against Corizon, John G. Migliori ("Migliori"), Grant W. Roberts, HSA ("Roberts"), and Kevin G. Shea ("Shea") as malpractice Defendants.

50. Malpractice Defendants failed to properly diagnose, evaluate, and treat Mr. Rolon's medial and lateral menisci tears (Right knee joint); the

anteromedial cyst (infrapatellar soft tissues anterior to the medial condyle), calcification at the insertion of the patellar tendon on the tuberosity consistent with sequela of trauma (Left knee joint), and thus breached the applicable standard of care owed to Mr. Rolon which proximately caused Plaintiff's condition to irreversibly deteriorate causing him to suffer needlessly.

51. Pursuant to Idaho Code Sec. 6-1001, Mr. Rolon requested that the Idaho State Board of Medicine provide a hearing panel for pre-litigation consideration of a medical malpractice claim against Drs. Shea and Migliori on May 9, 2018 (received by ISBOM 5/14/2018). ISBOM Case No. 43-18 — Rolon v. Migliori, MD et al. Panel Hearing held June 26, 2018.

52. Malpractice Defendants had a duty to provide Mr. Rolon with competent health care which met the applicable community standard of care practice under Idaho Code Sec. 6-1012.

53. Malpractice Defendants through their own conduct and/or the conduct of their employees, agents and independent contractors, breached the applicable standard of care owed to their patient, by failing to accurately diagnose and competently evaluate and treat Mr. Rolon's presenting symptoms, including, but not limited to osteoarthritis of the knees.

54. Additionally, Malpractice Defendants through their own conduct and/or the conduct of their employees, agents and independent contractors breached the applicable standard of care owed to Mr. Rolon:

    a. Failing to have properly formulated, adopted, and enforced adequate rules and policies to provide the appropriate stnadard of care to Mr. Rolon suffering from chronic knee pain and/or the consequences thereof including, but not limited to medial and lateral meniscal tears, and osteoarthritis of the knee; and

//

    b. Failing to have properly hired, retain, trained, and supervised competent medical staff that were aware and capable of performing their duties of providing appropriate standard of care to patients, such as Mr. Rolon, who suffer from structural soft-tissue knee injuries and/or the consequences thereof including, but not limited to osteoarthritis of the knee.

55. Corizon and their officers, directors, managers, administrators, independent contractors, and employees negligently failed to meet the applicable standard of health care practice under Idaho law and Chapter 10 of Title 6, Idaho Code, which negligence was and is the proximate cause of Mr. Rolon's damages in an amount to be proven at trial.

56. Malpractice Defendants are vicariously liable for the negligent failure of their employees, agents and independent contractors to meet the standard of health care practice under Idaho law and Chapter 10 of Title 6, Idaho Code, which negligence was and is the proximate cause of Mr. Rolon's damages in an amount to be proven at trial.

57. To the extent that the officers, directors, managers, administrators and/or employees of Malpractice Defendants were not licensed health care professionals or directly involved in the provision of patient health care, then by the decisions, acts or omissions as alleged above, Malpractice Defendants, and their officers, directors, managers, administrators and/or employees negligently failed to exercise reasonable and ordinary care for the safety of others, including Mr. Rolon, which negligence was the proximate cause of the Plaintiff's needless suffering, medical harm, and damages.

58. As a direct and proximate result of the Defendants' acts, omissions, and other wrongful conduct, Mr. Rolon suffered the irreversible progression of osteoarthritis of the knee joints and the health and medical consequences of delays in receiving appropriate treatment (arthroscopic menisectomy),

as a result of Defendant Corizon's policies which represent an extreme deviation from reasonable standards of care for such providers of health care in the United States.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff prays for judgment and other relief as follows:

A.  For a declaratory judgment that the Defendants have violated, and are continuing to violate the U.S. Constitution, amend. VIII through 42 U.S. Sec. 1983;

B.  For the issuance of a temporary restraining order, preliminary and permanent injunction requiring Defendants Tewalt ("IDOC"), Seigert and Corizon (its employees, agents, representatives, and independent contractors) to immediately develop and institute policies whereby Mr. Rolon recieve the needed arthroscopic procedure for which his presenting symptoms require;

C.  For an award of monetary damages against Defendants Corizon and its employees, agents, representatives, and independent contractors in their individual capacities, jointly and severally, on Mr. Rolon's claim for compensatory damages in an amount to be determined at trial;

D.  For an award of punitive damages;

E.  For an award of prejudgment interest;

F.  For an award of Plaintiff's costs and disbursements;

G.  For an award of reasonable attorney fees in accordance with 42 U.S.C. Sec. 1988, and/or any other applicable statute supporting the award of fees, including but not limited to the provisions of Idaho Code Sec's. 12-120, 12-121, IRCP 54;

H.  For the issuance of an injunction to enjoin the Defendants from taking any action to interfere with Mr. Rolon's right to maintain this action,

or from retaliating against the Plaintiff for bringing suit; and

I. For such further and other relief as the Court deems just and equitable under the premises.

### DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the Plaintiff in the above-captioned case, that he has read the aforementioned complaint, and that the averments alleged therein are true and correct. 28 U.S.C. Sec. 1746; 18 U.S.C. Sec. 1621.

Executed at the Idaho State Correctional Center, 14601 S. Pleasant Valley Road, Kuna, Idaho, 83634. Submitted to IDOC prison officials for scanning to transmit via email to a designated ECF filing system pursuant to U.S. District Court (Local Rule, General Order No. 342).

DATED this 28th day of June, 2019.

*[signature]*
Antonio V. Rolon