UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTONIO V. ROLON,<br><br>                Plaintiff,<br><br>    v.<br><br>JOHN G. MIGLIORI; GRANT W. ROBERTS; CORIZON, INC.; KEVIN G. SHEA; JOSH TEWALT; RONA SIEGERT; and JOHN AND/OR JANE DOES A-Z,<br><br>                Defendants. | Case No. 1:19-cv-00254-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Antonio v. Rolon's Complaint as a result of Plaintiff's status as an inmate. The Court now reviews the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

1. **Screening Requirement**

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

2. **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

3. **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Center ("ISCC"). Plaintiff states that he suffers severe pain in both of his knees due to medial and lateral meniscal tears. *Compl.*, Dkt. 3, at 4–5. He alleges that he began receiving treatment for

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

the pain on December 2, 2015,[1] when he received an MRI. At that time, Plaintiff was housed at a private prison in Colorado. Plaintiff was transferred to ISCC in March 2016. Plaintiff claims that, from then until June 2017, he received inadequate medical treatment for his knee pain.

Most of Plaintiff's medical treatment throughout this period was provided by prison medical providers. However, prison medical providers referred Plaintiff to outside specialists on at least two occasions. Plaintiff alleges that, in May 2016, an outside provider, Dr. Schwartzman, recommended an arthroscopy as a "corrective procedure"; Plaintiff was not informed of this recommendation until nearly a month later. *Id*. at 6. Prison medical providers did not schedule an arthroscopy as recommended by Dr. Schwartzman.

Plaintiff was again examined by an outside provider, this time by Defendant Dr. Shea, on May 17, 2017. In the course of that examination, Dr. Shea reviewed ultrasound images of Plaintiff's knees taken in February 2017 but "was not provided the MRI report from December 2015." *Id*. at 9. Dr. Shea also did not conduct a new MRI. Unlike Dr. Schwartzman, Dr. Shea found that arthroscopic meniscectomy was unlikely to relieve Plaintiff's pain. Instead, he recommended "avoidance of impact activities," ice for Plaintiff's knee as needed, and "knee sleeves, or rigid bracing to offer temporary relief (but not long-term fix)." *Id*. at 9–10.

---

[1] It appears that Plaintiff's single reference to "December 2014" was intended to read "December 2015," as the Complaint contains no allegations of events occurring between December 2014 and December 2015. *See Compl*. at 4.

Defendant Dr. Migliori noted Dr. Shea's recommendations during an examination of Plaintiff on June 7, 2017. *Id*. The Complaint does not allege that Plaintiff received inadequate medical treatment after that date.

Citing guidelines from the Bureau of Prisons and the National Commission of Correctional Health Care, Plaintiff claims that the standard of care for a person with his knee problems is to provide "elective arthroplasty surgery." *Id*. at 10.

The Complaint asserts claims under 42 U.S.C. § 1983 and Idaho state law. Plaintiff sues Corizon, Inc.—the private company providing medical treatment to Idaho inmates under contract with the IDOC—as well as Dr. Shea and several individuals who are Corizon medical providers or IDOC officials.

**4.      Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

   **A.      *Statute of Limitations***

It appears that most of Plaintiff's claims are untimely. Federal civil rights actions arising in Idaho are governed by a two-year statute of limitations. Idaho Code § 5-219; *see also Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that state statute of limitation for personal injury actions governs § 1983 actions), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

Although the state statute of limitations governs the time period for filing a § 1983 claim, federal law governs when that claim accrues, or arises. *Elliott v. City of Union*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

*City*, 25 F.3d 800, 801-02 (9th Cir. 1994). Under the "discovery rule," a claim accrues "when the plaintiff knows or has reason to know of the injury" that is the basis of the claim. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal quotation marks omitted). That is, the statute of limitations begins to run when the plaintiff becomes aware of the actual injury—not "when the plaintiff suspects a legal wrong." *Id*.

If a plaintiff cannot show that his claim accrued during the statute of limitations period, he still may file a lawsuit beyond the limitations deadline if he can show that the statute should have been tolled (or stopped) for a certain period of time during the deadline period within which he should have filed the lawsuit. Pursuant to the Prison Litigation Reform Act ("PLRA"), the "statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir. 2005).

In addition to tolling under the PLRA, state tolling law applies to § 1983 actions unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464-65 (1975); *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008). Idaho law allows for statutory tolling of the statute of limitations for a person's juvenile status or insanity. Idaho Code § 5-230. However, because the Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute," equitable tolling is not available in Idaho. *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007).

The doctrine of equitable *estoppel*, however, is available in Idaho. While it "does not 'extend' a statute of limitation," equitable estoppel works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co., v. Chemetics International, Inc*., 887 P.2d 1039, 1041 (Idaho 1994). Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id*.

Medical malpractice claims in Idaho are also subject to a two-year statute of limitation. Idaho Code § 5-219(4). Under Idaho law, a malpractice claim generally accrues "as of the time of the occurrence, act or omission" of which the plaintiff complains. *Id*. An exception exists for claims based upon leaving a foreign object in a person's body or where the fact of damage has been fraudulently and knowingly concealed; such claims accrue "when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding" the problem. *Id*.

Plaintiff filed this action, at the earliest, on June 28, 2019 (mailbox rule). Allowing for a maximum of thirty days to exhaust the prison grievance process, it would appear that any claims that arose before May 29, 2017—two years and thirty days before June

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

28, 2019—are time-barred. If Plaintiff includes any such claims in an amended complaint, he must explain why he believes those claims are not subject to dismissal as untimely.

### B.  Section 1983 Claims

Even if some or all of Plaintiff's claims are timely, his § 1983 claims still would be subject to dismissal as implausible.

####  i.  Standards of Law for Civil Rights Claims

To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09.

To bring a § 1983 claim against a municipality (local governmental entity) or a private entity performing a government function—such as Corizon—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a

subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

835. A prison official or prison medical provider acts with "deliberate indifference...only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Stated another way, a prison medical provider's judgment in choosing one treatment over another—even if the chosen treatment happens to be less expensive and, therefore, more profitable to the entity providing that treatment—does not constitute deliberate indifference unless the chosen treatment "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference

when they provide medical treatment even if it is subpar or different from what the inmate wants."). A business providing medical treatment to prisoners may use legitimate means to cut costs and maximize profits where it can—much like most insurance companies in the health care industry in the outside world—so long as minimum constitutional requirements are met. *See Zingg v. Groblewski*, 907 F.3d 630, 638 (1st Cir. 2018) (holding that there is no "per se Eighth Amendment prohibition against corrections officials considering cost, even when considered only in the course of selecting treatment that is aimed at attending to an incarcerated person's serious medical needs").

      ii.      <u>The Complaint Fails to State a Plausible Eighth Amendment Claim</u>

It appears that the sole "medical encounter" falling within the statutory limitations period was Dr. Migliori's examination of Plaintiff on June 7, 2017. *Compl.* at 10. Plaintiff's only allegation regarding that encounter is that Dr. Migliori recorded in Plaintiff's medical file the recommendations of Dr. Shea, the outside medical provider whom Plaintiff visited on May 17, 2017. But the fact that Dr. Migliori noted and described another doctor's recommendations in Plaintiff's chart does not suggest deliberate indifference—indeed, it appears to be sound medical practice. Thus, any Eighth Amendment claim based on the June 17, 2017 examination is implausible.

Further, even if the rest of Plaintiff's claims are deemed timely, the Complaint still does not plausibly allege an Eighth Amendment violation. Plaintiff provides many specific facts about his medical treatment between December 2, 2015 and May 17, 2017. Those facts reveal the following: (1) Plaintiff was examined by prison health care providers at least fourteen times; (2) Plaintiff was referred to an outside specialist for

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

consultation at least twice (Dr. Schwartsman in May 2016 and Dr. Shea in May 2017); and (3) Plaintiff's medical treatment included instructions to avoid certain physical activities, numerous different medications, physical therapy, infra-arthro-cellular or intra-articular steroid injections, and compression sleeves. *Compl*. at 5–10.

These facts do not give rise to a reasonable inference that any Defendant had "subjective knowledge and conscious disregard of a substantial risk of serious injury." *Toguchi*, 391 F.3d at 1061. Plaintiff's recitation of his medical treatment instead suggests that the prison medical providers were "consistently responsive to [Plaintiff's] medical needs." *Id*. And although Dr. Schwartsman stated in May 2016 that Plaintiff "may benefit from arthroscopy," *Compl*. at 6, this allegation shows only that the prison medical providers disagreed with that course of treatment—which does not plausibly suggest deliberate indifference, *see Sanchez*, 891 F.2d at 242.

Because the Complaint does not plausibly allege that any Defendant chose a "medically unacceptable course of treatment" for Plaintiff in "conscious disregard" of a substantial health risk, Plaintiff has not stated a plausible Eighth Amendment claim. *Toguchi*, 391 F.3d at 1058.

### C. State Law Claims

In addition to § 1983 claims, Plaintiff asserts claims of medical malpractice under Idaho law. *Compl*. at 13–16. "In a negligence action the plaintiff must establish the following elements: '(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage.'" *Jones v.*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

*Starnes*, 245 P.3d 1009, 1012 (Idaho 2011) (quoting *Hansen v. City of Pocatello*, 184 P.3d 206, 208 (Idaho 2008)).

To succeed on a medical malpractice claim, the plaintiff must "affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence" that the defendant medical provider "negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided." Idaho Code § 6-1012. A plaintiff asserting a malpractice claim also must first submit the claim to a prelitigation screening panel in accordance with Idaho Code § 6-1001.

The June 2017 "encounter" with Dr. Migliori—the only instance of medical treatment that occurred within the limitations period—does not support a conclusion that Dr. Migliori acted negligently. Further, even if Plaintiff's other malpractice claims are deemed timely, the Court would decline to exercise supplemental jurisdiction over those claims because Plaintiff has not stated a plausible federal claim. *See* U.S.C. § 1367(c). If Plaintiff is allowed to proceed on a federal claim in an amended complaint, and if the amended complaint states a plausible state law claim, the Court will reconsider the issue of supplemental jurisdiction.

### 5.     Standards for Amended Complaint

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal

INITIAL REVIEW ORDER BY SCREENING JUDGE - 15

connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of an Eighth Amendment or medical malpractice claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant. In addition, Plaintiff must include facts showing that Plaintiff can meet the *Monell* requirements if Plaintiff continues to assert claims against Corizon (explained in detail above).

Moreover, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "First Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant

knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED** that Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. If Plaintiff does not amend within 28 days, this case may be dismissed without further notice.

DATED: December 9, 2019

_____
B. Lynn Winmill
U.S. District Court Judge